IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GEORGE GALLEGOS

Plaintiff,

v.

Civ. No._____________

DEMAND FOR JURY TRIAL

RICHARD TRUJILLO and JASON GALLEGOS, in their individual capacities, and THE CITY OF ESPANOLA,

Defendants.

COMPLAINT

## I. Introduction

George Gallegos is a 47-year-old resident of Espanola, New Mexico. As a result of physical maladies, he is totally disabled. On the morning of February 21, 2014, Plaintiff was with his two young step children at the school bus stop near his home in Espanola, New Mexico, waiting for the school bus to come when Defendants Trujillo and Gallegos drove up in their police units. Defendants had no warrant to arrest Plaintiff. They had been dispatched to respond to an anonymous call that a man had been "throwing fingers" at some passing vehicles. Defendants got out of their cars. After Plaintiff asked them what was going on, Defendants forcibly grabbed Plaintiff. Defendant Trujillo took him by his left arm, twisted it high up his back, and shoved Plaintiff's face hard into a police car. Defendants then handcuffed him. Defendant Trujillo cursed at Plaintiff and threatened to take him to jail. Defendants then put Plaintiff in a locked police unit and transported him back to his house. At all times

material hereto, Defendant Gallegos was in a position to intervene but chose not to do so and, instead, participated in the handcuffing. After Plaintiff was taken out of his car, Defendant Trujillo threatened to beat him. Defendant uncuffed Plaintiff and told him that he was not to wait at the bus stop again. Defendants then drove off.

As a result of Defendants' conduct, Plaintiff was in severe injury which required surgery and continues to suffer serious physical pain distress. Moreover, Plaintiff was subjected to extreme humiliation in front of his stepdaughter and his son and the other children waiting for the bus.

Plaintiff brings this action pursuant to 42 U.S.C. §1983 for the violation of his Fourth Amendment right to be free from unreasonable seizure of his person, including his right to be free from unreasonable force. He also brings state law claims for assault, battery, false imprisonment, false arrest and violation of his state constitutional rights pursuant to the New Mexico Tort Claims Act.

## II. Jurisdiction and Parties

1. Jurisdiction and venue are proper pursuant to 42 U.S.C, §1343. Supplemental jurisdiction of the state law claims brought under the New Mexico Tort Claims Act, NMSA, § 41-4-1 to -27, is present under 28 U.S.C. §1367.

2. All of the parties reside or do business in New Mexico, and the acts complained of occurred within Rio Arriba County, New Mexico.

3. Plaintiff has satisfied the notice requirements set forth in NMSA 1978, § 41-4-16 of the New Mexico Tort Claims Act.

4. Plaintiff George Gallegos is a resident of Espanola, in Rio Arriba County, New Mexico. As a result of cancer surgery in1986, Plaintiff has had a total prosthesis on one

leg and has only a metal rod from his hip to his knee. Plaintiff suffered further injuries in a 2008 automobile accident. As of February 21, 2013, Plaintiff was totally disabled. His disability interferes with his ability to run and walk and is apparent to anyone watching him walk.

5. Defendant City of Espanola ("City") is a municipality within the meaning of the New Mexico Tort Claims Act.

6. Defendant City is a person within the meaning of 42 U.S.C. § 1983.

7. At all times material hereto, Defendant City was responsible for the operation of the Espanola Police Department ("EPD") and for claims against it.

9. Defendant Richard Trujillo is an individual who at all times material hereto was employed by the City of Espanola as a police officer. At all times material, Defendant Trujillo was acting within the course and scope of his employment and under color of state law.

10. Defendant Jason Gallegos is an individual who at all times material hereto was employed by the City of Espanola as a police officer. At all times material, Defendant Gallegos was acting within the course and scope of his employment and under color of state law.

**III. The Facts Regarding Defendants' Violation of Plaintiff's Fourth Amendment Rights.**

11. On morning of Friday, February 21, 2014, Plaintiff walked from his house to the school bus stop with his ten year old stepdaughter and his seven-year-old son. The bus stop is on the same street as Plaintiff's house. There were other children there. The bus was a little late so Plaintiff walked across the street and looked toward the direction the bus would come from to see if it was on its way.

12. As he was standing there, Plaintiff heard vehicles approaching. Defendant Trujillo and Defendant were in their police cars. They drove up to where Plaintiff was standing and got out of their units. Defendants were standing next to each other. They had no warrant for the arrest of Plaintiff. They had been dispatched to the area in response to an anonymous call alleging that a male had been "throwing fingers" at unnamed vehicles as they drove by. There was no complainant and Defendants had interviewed no witnesses.

13. Plaintiff asked Defendants what was going on. Defendants Trujillo responded by taking Plaintiff's left arm. Defendant Trujillo then twisted Plaintiff's left arm high up his back, taking it up near the nape of Plaintiff's neck. After getting Plaintiff's arm behind his back, Defendant Trujillo pushed Plaintiff's face into the hood of the police unit and roughly handcuffed him. Plaintiff cried out from the tremendous pain he was placed in and told Defendant "you're breaking my arm." Defendant Trujillo, speaking in an aggressive, intimidating and threatening voice, told Plaintiff that he did not "give a F---." Defendant Trujillo told Plaintiff that they were "tired" of him and complaints they had received about Plaintiff.

14. During the time that the events described in paragraph 13 were occurring, Defendant Gallegos was located in the immediate area where Defendant Trujillo had Plaintiff. Defendant Gallegos knew they had no warrant to arrest Plaintiff and knew they had no lawful basis to make a warrantless arrest. Defendant made no effort to intervene and stop Defendant Trujillo from using the force described in paragraph 13 or to stop Defendant Trujillo from handcuffing Plaintiff or to get Plaintiff released from the handcuffs and participated with Defendant Trujillo in placing Plaintiff in handcuffs. At

all times, Defendant Gallegos was close enough have successfully intervened but refused to do so. In fact, Defendant Gallegos assisted in the handcuffing process and has stated that he grabbed and twisted Plaintiff's right arm to accomplish this.

15. Defendant Trujillo then ordered Plaintiff's ten-year-old stepdaughter Johnecca to leave the bus stop and go to her house. Defendant ordered Johnicca to tell her mother that Defendants had custody of Plaintiff. Frightened over what she had just witnessed and not understanding what was going on, Johnicca ran off and did what she was ordered to do.

16. Defendant Trujillo then told Defendant Gallegos to put Plaintiff, who was still handcuffed and in pain, inside his police unit. Defendant Gallegos told Plaintiff to get inside the car and Plaintiff did so. The two Defendants then transported Plaintiff from the bus stop area to Plaintiff's home. Having handcuffed Plaintiff, placed him inside a locked police unit and then transported him from one location to another, Defendants' seizure constituted a de facto arrest for which Defendants lacked probable cause. In addition to the physical pain he was feeling, Plaintiff was embarrassed and humiliated by this public seizure undertaken in front of his stepchildren and the other neighborhood children.

17. After Defendants arrived at Plaintiff's home Defendant Gallegos got Plaintiff out of the car and Plaintiff stood by the car in handcuffs. Plaintiff's partner, Nicole Mascarenas, was already outside the house. Defendant Trujillo asked her in a rude and nasty way "Is that your boyfriend?" Defendant Trujillo then got close to Plaintiff's face and pointed in the direction of the nearby baseball field. Defendant Trujillo told Plaintiff he could take Plaintiff over to the field and "knock the f--- out of you" and that no one

would know or care if Defendant did so. Plaintiff was terrified. He asked Defendant Trujillo if he could do such a thing and Defendant Trujillo replied affirmatively. Plaintiff's four year old stepdaughter was present and became frightened by Defendant Trujillo's conduct. This, in turn, caused Plaintiff to feel humiliation, embarrassment and shame.

18. In an effort to gain an understanding about what was happening, Plaintiff asked Defendant Trujillo if they could step away from the others so that Plaintiff could speak with him. They walked across the street. Plaintiff was still in handcuffs. Defendant Trujillo ordered Plaintiff to no longer to wait at the bus stop with his stepchildren but must stay away from that area and wait on the opposite side of the street or face arrest. Defendant then took the handcuffs off Plaintiff and the police then left.

19. Plaintiff was hurting. The left side of his upper body was in great pain. His neck, his arm, his shoulder and his chest hurt. Plaintiff located a walk-in clinic and drove to Santa Fe to be seen and treated by a doctor at Concentra. He continued to feel pain throughout his left arm and shoulder area over the ensuing months. Subsequently, an MRI revealed shoulder tears and surgery was performed.

20. On February 28, 2014, around 2:45 pm, Espanola police officers were summoned to the area near Plaintiff's house regarding an individual who was urinating in public. This person was arrested. Defendant Trujillo drove up to Plaintiff's house where Plaintiff was present with his four year old stepdaughter. Defendant asked Plaintiff if he had been up the street starting trouble. Plaintiff said that he had not and Defendant Trujillo then drove off. Defendant had no reason to drive to Plaintiff's house and his doing so further aggravated the emotional trauma Defendant had induced a week earlier.

21. At all times material hereto, each of the Defendants acted in an objectively unreasonable manner in regard to each and every aspect of the seizure and searches of Plaintiff George Gallegos.

## IV. FEDERAL CONSTITUTIONAL CLAIMS

### FOURTH AMENDMENT CLAIM (UNREASONABLE SEIZURE)
(Defendants Trujillo and Gallegos)

22. Plaintiff incorporate by reference the preceding paragraphs as though they were stated fully herein.

23. Under the totality of the circumstances the above-described seizure of Plaintiff George Gallegos was objectively unreasonable and violated his clearly established Fourth Amendment right to be free from unreasonable seizure of his person. These circumstances include the use of handcuffs to detain him, the use of force to handcuff him, placing him in a police unit while in handcuffs, transporting him in the police unit while he was handcuffed from one location to another against his will, and keeping him in handcuffs after Defendants took him to his house. The totality of the circumstances also included Plaintiff's obvious disability, the number of police officers present, the fact that the seizure occurred in the morning day light, the fact that Plaintiff was not suspected of having committed a violent crime- or any crime at the time of the seizure, the lack of any need for immediate action, the fact that Plaintiff was handcuffed, the nature force used against him, and the fact that Plaintiff was unarmed and was not a physical threat to anyone. Moreover, under the circumstances, the seizure of Plaintiff constituted a de facto arrest.

24. Defendant Trujillo violated Plaintiff George Gallegos's Fourth Amendment right by his conduct in physically affecting the unreasonable seizure.

25. Defendant Gallegos knew or should have known there was no lawful basis to use force on Plaintiff or to handcuff him. Defendant Gallegos had a duty to intervene to prevent Defendant Trujillo from using the above-described force on Plaintiff and from handcuffing and from having Plaintiff put in a police unit while handcuffed and driven away from a place where he had a lawful right to be and to remain at. Defendant Gallegos was in a position where he could have successfully stopped the unreasonable seizure but chose not to. Instead, Defendant Gallegos chose to assist Defendant Trujillo in handcuffing, forcibly placing Plaintiff into a police unit in handcuffs and transporting him away from the school bus stop. Defendant Gallegos' conduct violated Plaintiff's Fourth Amendment rights.

**V.** FOURTH AMENDMENT CLAIM (UNREASONABLE FORCE)
(Defendants Trujillo and Gallegos)

26. Plaintiff incorporate by reference the preceding paragraphs as though they were stated fully herein.

27. The amount of force used to handcuff Plaintiff was excessive and unreasonable under the totality of the circumstances and violated Plaintiff's Fourth Amendment fights.

**VI.** **NEW MEXICO TORT CLAIMS**

FALSE ARREST AND FALSE IMPRISONMENT AND UNLAWFUL SEIZURE UNDER THE NEW MEXICO CONSTITUTION

28. Plaintiff incorporates by reference the preceding paragraphs as though they were stated fully herein.

29. Defendant Officers arrested and/or imprisoned Plaintiff without probable cause or other legal cause or justification.

30. The detention was not justified or privileged under state law and constituted false arrest and imprisonment for which immunity has been waived by NMSA 1978, § 41-4-12 (1997). Because Defendants were acting within the course and scope of their employment, Defendant City of Espanola is liable under the doctrine of *respondeat superior*.

BATTERY

31. Plaintiff incorporates by reference the preceding paragraphs as though they were stated fully herein.

32. In undertaking the actions described above, Defendants intended to cause a harmful and offensive contact with Plaintiff.

33. In undertaking the actions described above, Defendants caused an offensive contact with Plaintiff to occur.

34. Plaintiff suffered pain and injuries as a result of Defendant's actions.

35. The actions of Defendants as described in the preceding paragraphs, constitute a battery under New Mexico law for which immunity has been waived by NMSA 1978, § 41-4-12 (1977).

36. Because Defendants were acting within the scope and course of their duties as employees of the City of Espanola while committing a battery upon Plaintiff, the City of Espanola is liable for battery pursuant to the doctrine of *respondeat superior*.

**VI. MUNICIPAL LIABILITY CLAIM**

37. Defendant City of Espanola maintained an unwritten custom or practice of hiring and retaining persons not qualified to be law enforcement officers and then failing to adequately train, supervise and/or discipline its officers.

38. For example, Defendant City of Espanola knew or should have known that Defendant Trujillo had been terminated from prior law enforcement employment due to misconduct, including engaging in acts of dishonest. Upon information and belief, Plaintiff alleges that complaints of excessive force and/or unreasonable seizure had been made against Defendant Trujillo. Defendant City knew or should have known that Defendant Trujillo was unfit for police work and knew or should have known that hiring him as a police officer would pose an unreasonable danger that citizens of Espanola and other persons. Likewise, prior to this incident, Defendant City knew or should have known that other officers, including Danny Pacheco and Victor Grossettete, had been the subject of court judgments and/ or numerous lawsuits and other complaints alleging excessive force and/or unlawful seizure and/or acts of dishonesty but hired and/or retained them and then failed to discipline them when they unlawfully seized citizens and/or used unreasonable force.

39. Defendant City of Espanola failed to provide adequate training to Defendants Trujillo and/or Gallegos regarding the circumstances when an investigative detention may be lawfully conducted; the circumstances under which a seizure becomes a de facto arrest; the use of force on citizens; and the circumstances under which handcuffs should be applied, including the circumstances under which handcuffs may be applied with a citizen's hands kept in front of them. Defendant City of Espanola further failed to provide adequate training on how to conduct the seizure of a non-violent, disabled individual. To the extent that the training given was not inadequate, Defendant failed to take adequate steps to ensure that the training provided was properly inculcated. These failures were a direct cause of the injuries suffered by Plaintiffs.

40. Defendant City of Espanola failed to adequately supervise and/or discipline subordinate officers who were the subject of citizen complaints, tort claim notices and/or lawsuits. Defendant lacked an adequate internal affairs system. For example, as occurred in the case of Plaintiff, Defendant often failed to even conduct any internal investigation after receiving notice of alleged misconduct of its officers.

41. On or about March 12, 2014, Defendant received written notice that Plaintiff was alleging that Defendant Trujillo had subjected Plaintiff to an unreasonable seizure that included the use of excessive force and that there were several witnesses to the incident.

42. Defendant City of Espanola never interviewed Plaintiff, Nicole Mascarenas or Plaintiff's stepchildren. There were other witnesses to the incident and to the best of Plaintiff's knowledge, none of the other witnesses to the incident were interviewed. To the best of Plaintiff's knowledge no internal affairs investigation was conducted or, if one was conducted, it was grossly inadequate since neither Plaintiff or the above named witnesses were interviewed or contacted for interview. Instead, the Espanola Chief of Police merely asked Defendants, who had not prepared police reports at the time of the incident despite having used handcuffs on a citizen and having placed him in a locked police unit, to submit self-serving memos and then ratified their conduct by refusing to take any disciplinary action against them. Had a professional internal affairs investigation been conducted which included interviewing all the witnesses and reviewing all the documentary evidence, it would have revealed that the individual defendants had made material false statements and material omissions in their police reports and that Defendants had violated Plaintiffs 'rights.

43. Defendant City of Espanola maintained an unwritten custom and practice that permitted or condoned the unlawful seizure of citizens, including the use of unreasonable and unneccessary force. The maintenance of this custom created an atmosphere where Espanola officers felt they could violate the rights of citizens with impunity. This custom and practice was a direct cause of the injuries suffered by Plaintiff herein.

44. At all times material hereto, Defendant City of Espanola acted with deliberate indifference for the constitutional rights of the citizens of the City of Espanola and Rio Arriba County, including the constitutional rights of Plaintiff. Defendant City of Espanola was also negligent in its training, supervision, and discipline of it subordinate officers, including Defendants Trujillo and Gallegos and this was a direct cause of the violation of Plaintiff's state law rights.

**VIII. Damages**

45. As a direct and proximate result of the acts and omissions of the Defendants described in this Complaint, Plaintiff George Gallegos suffered and continues to suffer significant physical injuries and emotional distress, humiliation, embarrassment, fear and anxiety, which continues to this date, and the violation of his federal constitutional rights. Plaintiff incurred thousands of dollars of medical expenses and continues to incur medical expenses as a result of the acts and omissions of Defendants.

46. Because of the intentional, willful, malicious and/or reckless indifference of his conduct, Plaintiff is entitled to punitive damages against Defendants Trujillo and Gallegos

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1. For compensatory damages in an amount to be determined by the trier of fact, jointly and severally.

2. For punitive damages against the individual Defendants in an amount to be determined by the trier of fact.

3. For pre-judgment and post-judgment interest.

4. For attorney's fees and costs pursuant to 42 U.S.C. §1988.

5. For such other and further relief as the Court deems just and proper.

Respectfully Submitted,

______________________________

Richard Rosenstock
1121 Paseo de Peralta
Santa Fe, NM 87501
(505) 988-5324 Fax:(505) 989-4844
richard.rosenstock@gmail.com

Attorney for Plaintiff